CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

NOV 14 2022

LAURA A. AUSTIN, CLERK
BY:  s/ H. MCDONALD
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| PATRICK & SHIRLEY LATTIMORE | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 4:21-cv-00038 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SONAL & KAMLESH BRAHMBATT, | ) | By:   Hon. Thomas T. Cullen |
| THE DHYANNI CORPORATION, | ) |         United States District Judge |
| WYNDHAM HOTELS & RESORTS, | ) | |
| and BRACH BANKING & TRUST / | ) | |
| TRUIST FINANCIAL, | ) | |
| | ) | |
| Defendants. | ) | |

This case arises out of the dissolution of an employment relationship between Plaintiffs Patrick & Shirley Lattimore and Defendants Sonal & Kamlesh Brahmbhatt, the Dhyanni Corporation, and Wyndham Hotels & Resorts ("Wyndham"). Plaintiffs, who are proceeding *pro se*, have brought numerous claims against these defendants and, by their most-recent filings, Branch Banking & Trust/Truist Financial ("Truist"). The matter is before the court on Truist's motion to dismiss (ECF No. 70). The court has construed Plaintiffs' complaint to state three claims against Truist: ordinary negligence (Claim I), breach of fiduciary duty (Claim II), and criminal conspiracy (Claim III). For the following reasons, Truist's motion to dismiss will be granted in part and denied in part.

## I.   BACKGROUND

The facts of the case are set forth in this court's previous opinion granting summary judgment to Wyndham and need not be repeated in great detail here. (*See* Mem. Op. p. 1–4, May 20, 2022 [ECF No. 38].) For clarity of this decision, the court will provide a brief summary

of the relevant facts, as follows.

In February 2020, Plaintiff Patrick Lattimore was hired as the general manager of The Super 8 Motel (now The Raceway Inn) in Martinsville, Virginia, and his wife, Plaintiff Shirley Bowden-Lattimore, was hired as its front desk clerk. (Third Am. Compl. ¶¶ 4–7 [ECF No. 27].) For unknown reasons, their business relationship with their employer soured and, on April 30, 2021, Plaintiffs were notified that, "due to a change in ownership, their services would no longer be needed."[1] (*Id.* ¶ 12.)

After their termination, Plaintiffs allege that Defendants Sonal & Kamlesh Brahmbhatt "withheld compensation salary and bonus money due and payable to Plaintiffs . . . ." (*Id.* ¶ 16.) Furthermore, and specific to Truist, Plaintiffs assert that "Truist manage[d] checking accounts owned by . . . Patrick Lattimore," and that "Truist colluded with Defendant Dhyanni Corporation to divert $751.52 from [Lattimore's] Checking Account without [his] [a]uthorization or knowledge." (*Id.* ¶¶ 42–43.) Plaintiffs do not allege that the withheld compensation is related to the allegedly diverted funds.

Following several iterations of Plaintiffs' complaint, Truist was named as a Defendant and served with a copy of the summons and complaint. (*See* ECF No. 67.) On August 19, 2022, Truist filed the present motion to dismiss. (ECF No. 69.) Plaintiffs responded. (ECF No. 89.) Truist filed a reply brief, and included with it the affidavit of Lori Hartwell, an associate operations manager at Truist, as an exhibit. (*See* Lori Hartwell Aff. ¶ 2, Sept. 28, 2022 [ECF No. 96-1].) Plaintiffs did not have the option to file a sur-reply, making this matter ripe

---

[1] The complaint does not explain the reasons why the Plaintiffs' relationship with their employer soured, nor does it identify the employer, save for references to "Defendants."

for disposition.[2]

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*,

---

[2] The court elected not to hold a hearing, as the parties' legal arguments were adequately set forth in their briefs and oral argument would not aid the decisional process.

550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.   ANALYSIS

### A.  Matters Outside the Pleadings

As a threshold matter, the court must determine what it can—and cannot—consider in evaluating Truist's motion to dismiss. Both Plaintiffs and Truist filed evidence in support of their respective positions. Plaintiffs filed various documents, including legal paperwork and a letter to Truist (*see* ECF No. 90), and Truist filed the affidavit of Lori Hartwell, an associate operations manager at Truist (*see* Aff. of Lori Hartwell ¶ 2, Sept. 28, 2022 [ECF No. 96-1]). In her affidavit, Ms. Hartwell explains that Truist investigated Plaintiffs' allegation that the subject withdrawal was "unauthorized," but concluded that his Direct Deposit Agreement with Truist authorized his employer "to both disperse and withdraw funds from" his checking account. (*Id.* ¶ 9.)

By providing and relying on evidence outside the pleadings, both parties[3] violated the long-standing and well-established rules regarding motions to dismiss; they injected evidence and facts outside of the pleadings. Moreover, Truist did so in its reply brief *and* argued that evidence as a basis to rule in its favor. By waiting until its reply brief to advance evidence that it claims entitles it to judgment, Truist deprived Plaintiffs of the opportunity to respond and present evidence to rebut its claims. That is not the purpose of a motion to dismiss under Rule 12(b)(6). Had Truist relied on such evidence in its opening brief, the court may have been inclined to convert its motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P. 12(d). But injecting outside evidence into its reply brief is a step too far. This would not fly on summary judgment, see *Weigle v. Pifer*, 139 F. Supp. 3d 760, 774 n.10 (S.D.W. Va. 2015), and the court will not countenance it in a motion to dismiss. The court will not consider Truist's extraneous evidence or reply brief in any way. If Truist wishes to submit evidence to support a legal argument, it must do so in a proper way.

**B. Negligence**

Turning to Plaintiffs' claims—and relying solely on the allegations in their pleadings—Plaintiff's first claim against Truist is one of ordinary negligence. Plaintiffs assert in their complaint that Truist "owed [Patrick Lattimore] a Duty of Care," and that Truist, "by their actions, breached … their Duty of Care." (Compl. ¶¶ 44–45.) To support this claim, Plaintiffs assert that "Truist did manage checking accounts owned by . . . Patrick Lattimore," and that "Truist colluded with Defendant Dhyanni Corporation to divert $751.52 from [Lattimore's]

---

[3] Plaintiffs are *pro se* and, although the rules apply equally to them, they may not have known better. Truist is represented by counsel, who *certainly* should have. Alternatively, if Truist felt that Plaintiffs' submission of evidence justified converting its motion to one for summary judgment, it was obliged to at least mention that.

Checking Account without [his] [a]uthorization or knowledge." (*Id.* ¶¶ 42–43.) The question before the court is whether Plaintiffs have alleged a plausible claim of negligence. They have.

Virginia law requires that plaintiffs seeking to establish actionable negligence do more than merely allege "negligence"; they must go further and "plead the existence of a legal duty, violation of that duty, and proximate causation which results in injury." *Matthews v. Bank of Am., N.A.*, No. 2:06CV175, 2006 WL 1720688, at *4 (E.D. Va. June 20, 2006) (citing *Delk v. Columbia/HCA Healthcare Corp.,* 259 Va. 125, 132, (2000)). In their brief, Truist makes several arguments in support of their motion to dismiss, but ultimately, resolution of the Truist's motion requires the court to evaluate two key questions: (1) whether Virginia's source-of-duty rule bars Plaintiffs' tort claim; and (2) whether Truist owed Patrick Lattimore a duty of care as an ordinary accountholder. The court will analyze each issue in turn.[4]

Virginia maintains a source-of-duty rule which generally prohibits a plaintiff from bringing a tort claim against a counterparty to a contract when the conduct at issue falls within the scope of the parties' contractual duties. *See Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 558 (1998) ("If the cause of complaint be for an act . . . which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort." (quoting *Oleyar v. Kerr, Trustee*, 217 Va. 88, 90

---

[4] Aside from the merits of any negligence claim, Truist also argues that Plaintiffs' complaint is an impermissible "shotgun" pleading. While the court agrees that Plaintiffs' pleading—and preference for multiple amendments—makes it difficult to discern their claims and allegations, the court is prepared to look past that flaw in resolving this motion. First, Plaintiffs are *pro se*, and their pleadings are afforded a certain leniency. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Second, as it relates to their claims against Truist, their allegations are simple enough to discern: Truist allegedly transferred money out of their account without the account holder's knowledge or authorization.

(1976))). The purpose of the source-of-duty rule is to prevent plaintiffs from asserting breach-of-contract claims styled as tort claims. Courts applying Virginia law have applied the source-of-duty rule to disputes arising between banks and their accountholders, finding that tort actions against a bank by an account holder are ordinarily barred. *See Eke v. Bank of Am., N.A.*, No. 3:09CV488, 2009 WL 10688932, at *3 (E.D. Va. Nov. 12, 2009) (dismissing a negligence claim against the bank for improper handling of funds where plaintiff failed to identify a common law duty separate and apart from any duty imposed by the parties' contract); *see also Matthews,* 2006 WL 1720688, at *4.

At a threshold level, for the source-of-duty rule to bar Lattimore's tort claim, Truist would have to show that its contract with Plaintiffs governs the subject matter of the dispute. In its motion to dismiss, Truist broadly claims that "any duties or obligations owed by Truist to Mr. Lattimore are governed in the Rules and Regulations governing the bank account. In other words, any duties owed would be contractual duties and not tort duties. Plaintiffs have not alleged any breach by Truist of a contractual duty." (Def's Mot. Dismiss pg. 5 [ECF No. 70].) But like its reply brief, Truist's argument relies on facts not alleged in Plaintiffs' complaint.

Even if the court were to accept (as is most certainly the case) that a contract governed the relationship between Truist and Plaintiffs, Truist still would not be entitled to dismissal of Plaintiffs' negligence claim *as pleaded.* Truist appears to contend that one or both of the following propositions are true: (1) by agreeing to the "Rules and Regulations governing the bank account," Plaintiffs are barred from bringing tort claims against the bank simply because a contract exists between the parties; or (2) the "Rules and Regulations" adequately

set forth the duties of the parties at the heart of the present dispute, relegating this case to a mere breach of contract claim. Neither argument is persuasive, at least at this preliminary stage.

If Truist's argument falls into the former camp, it is mistaken. While contracts often establish many duties as between the parties, those duties do not preclude the existence of any others. Indeed, courts applying Virginia law have found that parties to a contract may maintain common-law duties to one another, even when their relationship is purely contractual. *See, e.g.*, *Van Leer v. Deutsche Bank Securities, Inc.*, 479 F. App'x 475, 481 (4th Cir. 2012) ("Some cases, to be sure, present facts so unique that courts will impose an independent duty on a bank in regard to its transactions with a customer. … [T]his is the exception to the rule."); *Kaltman v. All-American Pest Control, Inc.*, 281 Va. 483 (2011) (finding that the knowing use of harmful chemicals by pest control company exceeded the scope of the parties' contract and was an actionable tort). To the extent that Truist's argument suggests that *all* tort duties are waived by the signing of a contract, its argument fails.

If, on the other hand, Truist's argument falls into the latter camp (the claim is barred), it has failed to show that the acts giving rise to the claim are within the scope of any contract between the parties. Again, Plaintiffs' complaint makes no reference to a contract between the parties, and Truist's conclusory (and improper) reference to the "Rules and Regulations governing the bank account" does not specify any contractual provision that purportedly covers the subject matter of this dispute. The court is therefore unable to determine, based on the pleadings, whether the contract in question does, in fact, govern Plaintiffs' claims.[5]

---

[5] Again—and it bears repeating—the court's analysis is frustrated by Truist's reliance on outside evidence on a

Turning to the question of whether a negligence cause of action against the bank can stand on its own, "[f]or the plaintiff to maintain a negligence claim against [a bank], he must identify a common law duty owed him by [the bank] that arose separate and apart from any duty imposed by the parties' contract." *Eke v. Bank of Am., N.A.*, at *3. In their complaint, Plaintiffs allege that "Truist did manage checking accounts owned by … Patrick Lattimore," and that "Truist colluded with Defendant Dhyanni Corporation to divert $751.52 from [Lattimore's] Checking Account without [his] [a]uthorization or knowledge." (Compl. ¶¶ 42–43.) In doing so, the complaint alleges that Truist breached a duty of care owed to Lattimore. (*See* Compl. ¶ 45.)

Assuming that a contract *did* exist between Plaintiffs and Truist, courts have distinguished between acts of non-feasance (failure to perform) and malfeasance (wrongdoing) and concluded that acts of *malfeasance* can give rise to tort claims notwithstanding an underlying contract between the parties. *See, e.g.*, *Pre-Fab Steel Erectors, Inc. v. Stephens*, No. 6:08-cv-00039, 2009 WL 891828, at *8–9 (W.D. Va. Apr. 1, 2009); *see also Kaltman v. All-Am. Pest Control, Inc.*, 281 Va. 483, 490–91 (2011). In *Pre-Fab Steel*, the defendants were each employed by the plaintiff and were party to an employment agreement. *Pre-Fab Steel Erectors*, 2009 WL 891828, at *1. One of the defendants served as the bookkeeper for the employer and "had possession of the company's regular checking account and issued all checks from that account to pay bills or reimburse employee expenses." *Id.* at *1. The plaintiff alleged that, from this position of trust, the defendants "looted" its bank accounts and withdrew unauthorized funds for their personal use. *Id.* at *8. In a tort action brought

motion to dismiss.

by the employer, the defendant-employees argued that the dispute was governed by their employment agreements, and that the claim was therefore barred by the source-of-duty rule. *Id.* at *8. The court disagreed, characterizing the defendants' affirmative and wrongful acts as malfeasance, finding that they had breached a duty that existed outside the scope of the employment contract. *Id.* at *9. The court held:

> The tort claims of fraud . . . arise from a common[-]law duty separate and independent from any contractual duties arising from Plaintiff's arrangements with Defendants. Plaintiff alleges that Defendants took advantage of their access to Plaintiff's funds, dealt Plaintiff's funds to themselves, and failed to disclose and deliberately concealed the unauthorized pay raises and distributions. These are allegations not of a mere failure to perform the contract, *i.e.*, nonfeasance, but of malfeasance . . . .

*Id.*; *see also Atlas Partners II, Ltd. P'ship v. Brumberg, Mackey & Wall, PLC,* No. 4:05-cv-00001, 2006 WL 42332, at *8 (W.D. Va. Jan. 6, 2006) ("[A]lleged fraudulent acts of nonfeasance are simply redundant of breach of contract claims while alleged fraudulent acts of misfeasance are capable of being independent fraud claims that could co-exist with a breach of contract claim.") (citing *Insteel Indus. Inc. v. Constanza Contracting Co., Inc.*, 276 F. Supp. 2d 479, 485 (E.D. Va. 2003)).

Plaintiffs' primary allegation is that Truist "divert[ed]" funds from his account "without his [a]uthorization or knowledge." (Compl. ¶ 43.) Diversion is defined as the "altering of the natural course or route of a thing." *Black's Law Dictionary* 477 (6th ed. 1990). To "alter" is to "make a change in; to modify." *Id.* at 77. Diversion is therefore an action of the sort which, under the reasoning of *Pre-Fab Steel*, may properly be characterized as malfeasance. In a manner similar to the defendants in *Pre-Fab Steel*, Truist is alleged to have been in a position of authority and trust over Lattimore's funds. And as in *Pre-Fab Steel*, Truist is alleged to have made

unauthorized transfers of Plaintiffs' funds from the account which it oversaw without the knowledge or authorization of the accountholder. Truist's alleged unauthorized diversion of Plaintiffs' funds, therefore, could fairly be characterized (as Plaintiffs do) as an act of malfeasance. Because this court accepts the facts alleged as true at this stage in the proceedings, it cannot say that Plaintiffs' claim *must* fail as matter of law. The court therefore concludes that Plaintiffs have sufficiently alleged an act of malfeasance, and therefore their claim of negligence will survive at this stage.

## C.  Breach of Fiduciary Duty

Plaintiffs' second claim is that Truist owed Patrick Lattimore a fiduciary duty, and that Truist breached that duty through its same set of actions. (Compl. ¶ 45.) This claim necessarily fails because an ordinary relationship between a bank and its customer does not give rise to a fiduciary duty. *See Deal's Adm'r v. Merchants' & Mechs.' Sav. Bank*, 120 Va. 297, 299 (1917) ("The relation between a bank and a depositor is that of debtor and creditor. The deposit creates an ordinary debt, not a privilege or right of a fiduciary character. It is a loan with the superadded obligation that the money is to be paid when demanded by check."); *Aldrich v. Old Point Nat'l Bank*, 35 Va. Cir. 545, 551 (Va. Cir. Ct. 1993) ("There is no common law or statutory support in Virginia which supports the creation of a fiduciary duty between a bank and its debtor/customer when the bank and the customer have a creditor/debtor relationship."); *Wynn v. Wachovia Bank, N.A.*, No. 3:09CV136, 2009 WL 1255464, at *4 (E.D. Va. May 6, 2009).

There is no allegation that Plaintiffs maintained any sort of agreement with Truist that went beyond a typical debtor/creditor relationship. Because no fiduciary duty is created in

an ordinary relationship between a bank and its customer, Truist did not owe any fiduciary duty to Plaintiffs. Accordingly, Truist's motion to dismiss will be granted as to Claim II.

## D. Criminal Conspiracy

Plaintiffs' final claim is that Truist's actions violated 18 U.S.C. § 241, the federal criminal conspiracy statute. This claim fails because § 241 does not create a private right of action that plaintiffs may pursue. *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) ("[Plaintiff] has no private right of action under 18 U.S.C. § 241"). Accordingly, Truist's motion to dismiss will be granted as to Claim III.[6]

## IV.   MOTION TO AMEND

Plaintiffs have filed *yet another* motion for leave to amend their complaint, an attempt to file a *sixth* amended complaint.[7] (ECF No. 86.) The latest iteration of the complaint attempts to revive claims previously dismissed and reasserts the meritless claims dismissed herein.

The court can no longer condone their abuse of the amendment process. While it is true that leave to amend should be "freely given," *Foman v. Davis*, 371 U.S. 178, 182 (1962), Plaintiffs' repeated efforts to amend their operative complaint frustrate the court's and the

---

[6] In its motion to dismiss, Truist raises the possibility that Plaintiffs have also alleged a civil conspiracy claim as well. The court disagrees with this contention based on a plain reading of Lattimore's complaint. (Compl. ¶ 46 ("[T]he actions of [Truist] constitute violations of Title 18 Section 241 [sic] of the US Crime Code … .").) But even assuming that a civil conspiracy claim had properly been alleged, the court would grant the motion to dismiss for failure to state a claim. Plaintiffs' Third Amended Complaint does not allege any facts in support of a conspiracy claim, relying instead on the conclusory allegations that Truist "colluded with Defendant Dhyanni Corporation." (*Id.*) Even under a liberal construction of the complaint, this allegation falls short of the standard necessary to overcome a 12(b)(6) motion. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Principles requiring generous construction of *pro se* complaints are not . . . without limits.").

[7] The court has permitted some amendments, denied others, and Plaintiffs have filed still other amendments without leave of the court.

parties' ability to reach the merits of this case. The time has come for Plaintiffs to *prove* the wrongdoing they have alleged. Because their latest attempt to amend would be futile and unduly prejudice the defendants, it will be denied.

## V.   CONCLUSION

At this stage, Plaintiffs' allegations make out a plausible claim for negligence. For the reasons discussed above, Truist's motion to dismiss will be granted as to Counts II and III, but denied as to Count I. Plaintiffs' motion for leave to amend will be denied as well.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 14th day of November, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE