CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JAN 03 2024

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| PATRICK LATTIMORE and SHIRLEY LATTIMORE, | ) ) ) |
| Plaintiffs, | ) ) Case No. 4:21-cv-00038 |
| v. | ) **MEMORANDUM OPINION** ) |
| SONAL BRAHMBHATT, *et al.*, | ) By: Hon. Thomas T. Cullen ) United States District Judge |
| Defendants. | ) |

This matter is before the court on motions for summary judgment filed by Defendants Sonal Brahmbhatt, Kamlesh Brahmbhatt, and the Dhyanni Corporation (collectively, the "Brahmbhatts") and Branch Banking & Trust/Truist Financial ("Truist" and, together with the Brahmbhatts, "Defendants"). Because Plaintiffs Patrick and Shirley Lattimore ("Mr. or Mrs. Lattimore" or, together, "Plaintiffs") failed to exhaust their administrative remedies relating to their federal claims of discrimination and failed to respond to the Brahmbhatt's argument that they are not landlords with regard to their unlawful-eviction claims, the Brahmbhatts are entitled to summary judgment. And because Mr. Lattimore's relationship with Truist is governed by contract, his negligence claim is barred by Virginia's source-of-duty rule. Once those claims are dismissed, all that remains are potential state-law claims.[1] Without a claim that vests subject-matter jurisdiction in this court, the court will decline supplemental

---

[1] In the first Memorandum Opinion in this matter (ECF No. 38), the court liberally construed Plaintiffs' Third Amended Complaint to potentially allege a cause of action under the Fair Labor Standards Act ("FLSA"). Since then, however, no party has addressed an FLSA claim in their briefings, and the subsequent evidence presented by the parties does not support this type of claim. Accordingly, the court no longer construes Plaintiffs' complaint as setting forth a claim under the FLSA.

jurisdiction over any remaining state-law claims and remand this case to Henry County Circuit Court.

## I. STATEMENT OF FACTS

The court previously summarized Plaintiffs' factual allegations and grievances against Defendants in detail and elects not to reiterate them in detail here. (*See* Mem. Op. at 2–4, May 20, 20222 [ECF No. 38]; Mem. Op. at 2, Nov. 14, 2022 [ECF No. 109]; Mem. Op. at 1–3, Jan. 10, 2023 [ECF No. 117].) In summary, Plaintiffs worked at and managed a motel in Martinsville, Virginia, but in April of 2021, they were fired "due to a change in ownership." (Third Am. Compl. ¶ 12 [ECF No. 27].) Plaintiffs contend that their termination was discriminatory, that Mrs. Lattimore is owed over $40,000 in back wages, that Mr. Lattimore had a deposit wrongfully deducted from his bank account, and that the new owners falsely accused Mr. Lattimore of assault. They also claim that they were wrongfully evicted when they were forced to vacate the manager's apartment previously provided to them at the motel so that the new owners could live on the premises.

The Brahmbhatts have moved for summary judgment on some of the claims pending against them.[2] Specifically, as to the claims of discrimination related to Plaintiffs' terminations, the Brahmbhatts argue that, because Plaintiffs did not first present their claims of race and age discrimination to the Equal Employment Opportunity Commission ("EEOC"), they failed to exhaust their administrative remedies and are therefore barred from bringing suit on those claims. As to the claims of wrongful eviction under the federal Fair Housing Act ("FHA"), the Virginia Fair Housing Law ("VFHL"), or the Virginia Residential Landlord and Tenant

---

[2] Plaintiffs' potential state-law claims are not the subject of the Brahmbhatts' motion for summary judgment.

Act ("VRLTA")—Plaintiffs' pleadings are unclear—the Brahmbhatts argue they were not Plaintiffs' landlords, and therefore those statutes are inapplicable.

Truist has also moved for summary judgment on the negligence claim asserted against it. It argues that, because the relationship between it and Mr. Lattimore was governed by a written contract, his negligence action is barred by the source-of-duty rule and/or the economic loss doctrine. Alternatively, Truist argues that, because the payroll processing company that was responsible for issuing Mr. Lattimore's biweekly paycheck authorized the withdrawal due to an alleged "overpayment" of salary, it did not breach any common-law duty owed to Mr. Lattimore. Additionally, because Mrs. Lattimore was not a holder on the account from which the funds were withdrawn, she has no standing to assert a claim against Truist related to the funds in that account.

Plaintiffs filed briefs in opposition to both motions for summary judgment. After a thorough review of the record, the arguments of the parties, and the applicable law, the motions for summary judgment are ripe for disposition.[3]

## II. STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on

---

[3] The court dispenses with oral argument as the parties' positions are adequately set forth in their written filings and further argument would not aid the court in deciding the issues presented by the parties' motions.

file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then point to specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary

judgment the court must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

### III. ANALYSIS

**A. The Brahmbhatts**

The Brahmbhatts move for summary judgment on some of the claims against them on two grounds. First, they contend that Plaintiffs failed to exhaust their administrative remedies on their federal claims of race and age discrimination. Second, they contend they were not Plaintiffs' "landlords," and therefore are not subject to the FHA, VFHL, or VRLTA.

Plaintiffs counter that the EEOC was "closed" due to the pandemic and that, in any event, they filed a claim for Mrs. Lattimore's unpaid wages with the Virginia Department of Labor. That claim was apparently denied because it exceeded the $25,000 limit for claim acceptance. (*See* Pls.' Br. Opp'n Brahmbatts' Mot. Summ. J. at 2, Ex. 1 [ECF No. 131].) They failed to respond to the argument regarding the Brahmbhatts' status as their landlord.

As it relates to Plaintiffs' claims for race and age discrimination, Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Discrimination on the basis of age is also made unlawful by the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. § 623(a)(1). Under both statutes,

exhaustion of administrative remedies requires the plaintiff to file a charge of discrimination with the EEOC. *See Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). Filing a charge with the EEOC and receiving a right-to-sue letter from that agency are prerequisites for suing under Title VII or the ADEA in federal court. *Ray v. Amelia Cnty. Sheriff's Off.*, 302 F. App'x 209, 212 (4th Cir. 2008) (per curiam). The scope of a plaintiff's lawsuit is then confined to "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Khoury v. Meserve*, 85 F. App'x 960, 960 (4th Cir. 2004) (per curiam). The court may not consider a claim beyond the scope of a plaintiff's EEOC charge. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002).

Here, Plaintiffs argue that they called the EEOC but the "offices were closed due to the Pandemic," and that they instead filed a claim with the Virginia Department of Labor ("DOL"), seeking over $40,000 of allegedly unpaid wages on behalf of Mrs. Lattimore. (Pls.' Br. Opp'n Brahmbatts' Mot. Summ. J. at 1–2, Ex. 1.)

First and foremost, Plaintiffs do not offer any evidence in support of their contention that, in August of 2021, or nearly 18 months after the onset of COVID-19 in the United States, the EEOC was closed due to the pandemic.[4] Absent any evidence to support this argument, the court finds no reason to excuse the well-settled requirement of exhaustion. Moreover,

---

[4] Plaintiffs make this, frankly, fantastical assertion in their brief (*see* Pls.' Opp. Mot. to Defs.' Mot. for Summ. J. at 1–2, June 29, 2023 [ECF No. 131]); it is not supported with any sworn or admissible evidence. Of note, Plaintiffs did not submit their brief under oath, nor did they provide an affidavit to establish that which they claim. Accordingly, the court is not obligated to give this factual assertion any credence, and the failure to support their argument that they were unable to file with the EEOC at any time from their termination to present with any evidence fails to create a genuine dispute of material fact sufficient to avoid summary judgment. *See* Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . .").

even if the EEOC *was* closed for an extended period of time nearly 18 months after the pandemic began, such a closure might justify a tolling of the period of time in which Plaintiffs would have been obligated to file a charge with the EEOC, but it would not justify a wholesale abandonment of that legal requirement.

Turning to the merits of the Brahmbhatts' argument, it is self-evident that filing a claim with the state DOL for allegedly unpaid wages is not the same as filing a charge with the EEOC alleging that Plaintiffs had been fired for discriminatory reasons. While exhaustion of administrative remedies with the EEOC does not divest this court of jurisdiction to hear Plaintiffs' claims, exhaustion is "a mandatory claims-processing rule that the court must enforce if raised." *Hairston v. Nilit Am., Inc.*, No. 4:23-cv-00011, 2023 WL 8011089, at *3 (W.D. Va. Nov. 20, 2023). Because Plaintiffs did not first present their allegations of discrimination to the EEOC for investigation, they may not pursue those federal claims in this—or any—court. Accordingly, the Brahmbhatts are entitled to summary judgment on Plaintiffs' race and age discrimination claims.

Turning next to the Brahmbhatts' argument that they were not "landlords" under the FHA, VFHL, or VRLTA, Plaintiffs did not respond to this argument. "Failure to respond to an argument made in a dispositive pleading results in a concession of that claim." *United Supreme Council, 33 Degree of the Ancient & Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, S. Jurisdiction of the U.S. v. United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry, S. Jurisdiction, Prince Hall Affiliated*, 329 F. Supp. 3d 283, 292 (E.D. Va. 2018); *see also Caison v. Thermo Fisher Sci.*, No. 5:22-cv-00013, 2023 WL 5938773, at *3 (W.D. Va. Sept. 12, 2023) ("Caison offers no response to this argument. Thus, it appears that Caison

has abandoned her retaliation claim, and the court will dismiss it.") Given their lack of any defense to the Brahmbhatts' argument, Plaintiffs have apparently abandoned their claims under the FHA, VFHL, or VRLTA, and the Brahmbhatts are entitled to summary judgment on those claims as well.[5]

**B. Truist**

Plaintiffs have brought a negligence claim against Truist, contending that, by wrongfully debiting Mr. Lattimore's account, Truist violated a duty of care owed to Mr. Lattimore as a customer. Truist makes several arguments in support of its motion. First, it contends that, because Mrs. Lattimore was not a holder on the account, it owed no duty to her (common law, contractual, or otherwise). As it relates to Mr. Lattimore, it notes that, in order to open an account with Truist, Mr. Lattimore agreed to be bound by the Bank Services Agreement ("BSA"). That contract, Truist argues, governed the parties' relationship, meaning any duty owed to Mr. Lattimore was one arising solely under the contract. Because Truist did

---

[5] On the merits, the court agrees that neither the FHA, the VFHL, nor the VRLTA apply to Plaintiffs' tenancy at the motel. The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling . . . because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The VFHL prohibits similar conduct. *See* Va. Code Ann. § 36-96.3(A)(1) ("It shall be an unlawful discriminatory housing practice for any person to . . . refuse to . . . . rent . . . a dwelling to any person because of race, color, religion, national origin, sex, elderliness, source of funds, familial status, sexual orientation, gender identity, or military status . . . ."). In their complaint, Plaintiffs assert that they were required to reside on the premises as a condition of their employment, and that they were ultimately asked to relocate to another unit so that the new owner of the motel could move into their apartment. (*See, e.g.*, Third Am. Compl. ¶¶ 10, 13.) These allegations, taken as true, do not suggest that any discriminatory action occurred. By their own admission, Plaintiffs were asked to move *so that the new owner of the motel could move in*, not for some discriminatory reason. And insofar as they contend the move to a smaller unit/room was a change to their conditions of employment, a claim for employment discrimination (which, as discussed, in barred due to a failure to exhaust administrative remedies) would be the appropriate recourse. Because their allegations, on their face, establish the non-discriminatory motive behind their purported "eviction" to a smaller dwelling, their claim is insufficient to survive. And because the VRLTA does not apply to an "occupancy [that] . . . is conditioned upon employment in and about the premises," Va. Code Ann. § 55.1-1201(C)(6), the VRLTA simply has no applicability.

not otherwise owe a duty to Mr. Lattimore or commit malfeasance that would give rise to a tort claim independent of the contract, Truist contends that it is entitled to summary judgment.

Plaintiffs concede that Mrs. Lattimore was not an account holder on the Truist account at issue and, therefore, Truist did not owe her any duty. Insofar as she asserts a claim of negligence, Truist is entitled to summary judgment on her claim.

As to Mr. Lattimore's claim against Truist, Plaintiffs concede that he signed the Truist signature card (ECF No. 148-1), which stated that Plaintiff had received the BSA and "agree[d] to accept the terms" of that document. (Pls.' Br. Opp'n Truist's Mot. Summ. J. at 5.) Plaintiffs further admit that "the Direct Deposit authorization [Mr. Lattimore] signed with Truist also authorized withdrawals" by Truist. (*Id.*).

When the parties' relationship is governed by a contract,[6] "[a] court is required to determine 'whether a cause of action sounds in contract or tort,' ultimately by ascertaining 'the source of the duty violated.'" *Penney v. Brock*, 84 Va. Cir. 459, 2012 WL 7874392, at *2 (Apr. 24, 2012) (quoting *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558 (1998)). It is well-settled that "[l]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Filak v. George*, 267 Va. 612, 618 (2004). But it is also true that "a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort, thus permitting a plaintiff to recover both for the loss

---

[6] This diversity-based claim is governed by Virginia law as the alleged tort (negligence) took place in Virginia. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (noting that the choice-of-law principles of the forum state apply to diversity actions); *Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993) (noting that, under Virginia's choice-of-law rules, tort claims are governed by the law of the place of the wrong—the *lex loci delicti*).

suffered as a result of the breach and traditional tort damages, including, where appropriate, punitive damages." *Dunn Constr. Co. v. Cloney*, 278 Va. 260, 266–67 (2009). As the court discussed in its prior Memorandum Opinion (ECF No. 109), one such circumstance is where a party, in breaching the contract, acted with malfeasance. *See, e.g.*, *Pre-Fab Steel Erectors, Inc. v. Stephens*, No. 6:08-cv-00039, 2009 WL 8918298, at *8–9 (W.D. Va. Apr. 1, 2009).

But as it relates to the present dispute, Truist has proffered undisputed evidence[7] establishing that its relationship with Mr. Lattimore was governed by a contract and that it did not engage in malfeasance when it debited Mr. Lattimore's account because it did so at the direction of the payroll processing company.[8] Plaintiffs have provided no specific facts to create a genuine dispute as to Truist's evidence and only challenge that evidence with conclusory statements.[9]

---

[7] The court recognizes that Plaintiffs take issue with what the BSA gives Truist license to do, but that dispute does not extend to the applicability of the BSA. They concede as much in their brief when they admit that the "Direct Deposit" agreement authorized withdrawals under certain circumstances.

[8] Truist provided evidence from the payroll processing company to establish that Mr. Lattimore's employer requested to void and reissue Mr. Lattimore's salary with a check date of July 16, 2021. (*See* ECF No. 148-5 (showing the void and reissue request); ECF No. 152-1 (providing a record custodian's certification attesting to the admissibility of the payroll-processing-company records (ECF No. 148-5) under Federal Rule of Evidence 803(6)).) This transaction is then reflected on Mr. Lattimore's account statement with Truist, which was provided both by Truist and Mr. Lattimore. (ECF No. 86-4; ECF No. 148-3.)

[9] The only evidence Plaintiffs offer is: a copy of the court's prior Memorandum Opinion; a purported copy of the letter informing Mr. Lattimore that his account had been closed; and Mr. Lattimore's August 2021 bank statement from Truist. (*See* ECF Nos. 150-1, 150-2, 150-3.) As a threshold matter, this letter and excerpted bank statement are likely inadmissible absent some foundational testimony or an affidavit establishing their authenticity. *See* Fed. R. Evid. 902(11). But assuming they are admissible, none of these pieces of evidence suggests, let alone establishes, a dispute about the relevant facts—specifically, that the payroll processing company asked Truist to debit the account because of an inadvertent "overpayment." The court has also scoured the record for any other evidence that would hint or suggest at any malfeasance on the part of Truist; there is none.

When a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by [Federal] Rule [of Civil Procedure] 56(c), the court may . . . grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). At most, the evidence before the court *might* permit a claim for breach of contract against Truist to survive.[10] But as it stands, Plaintiffs have failed to offer any admissible evidence to show that Truist acted outside the bounds of the contract that governed its actions, or that it acted with malfeasance. And absent an independent common-law duty, Plaintiffs' action, if one exists, lies in contract, not tort. *See Eke v. Bank of Am., N.A.*, 3:09CV488, 2009 WL 10688932, at *3 (E.D. Va. Nov. 12, 2009) (dismissing a negligence claim against the bank for improper handling of funds where the plaintiff failed to identify a common-law duty separate and apart from the duties imposed by the parties' contract). In the absence of evidence to support its claim, Plaintiffs claim for negligence cannot proceed, and Truist is entitled to summary judgment.

## C. Allegations of Criminal Violations

At this stage, the court finds it necessary to address Plaintiffs' repeated invocation of both state and federal criminal law. Any alleged violation of the law has no bearing on whether Plaintiffs have presented sufficient evidence to support their *civil* claims. "Where . . . a criminal statute establishes what is a crime and specifies the punishment for committing the crime, it is not enforceable in a private civil action unless Congress specifically so provides. That is because private citizens do not have the right to enforce federal criminal statutes absent

---

[10] It must be noted that, despite their myriad complaints, at no point did Plaintiffs ever assert a cause of action for breach of contract against Truist. Had they done so, on the record presently before the court, such a claim may have survived.

- 11 -

specific authority from Congress." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 842 (E.D. Va. 2017) (internal citation omitted). Accordingly, although Plaintiffs may believe that criminal statutes were violated, any such violation does not give them an independent right to bring a civil action, not does it advance any of their pending civil claims.

### D. Remaining Claims

Having determined that the Brahmbhatts and Truist are entitled to summary judgment on the challenged claims, all that remains of Plaintiffs' action are potential state-law claims, primarily Mrs. Lattimore's claim against the Brahmbhatts for some $49,000 in unpaid wages[11] and allegations related to the new owner falsely accusing Mr. Lattimore of assault. As any state-law claims are between citizens of Virginia and do not implicate federal questions, the court has no independent jurisdiction to hear them. And because all the claims that give rise to jurisdiction in this court have been dismissed, the court will decline to exercise supplemental jurisdiction over these paradigmatic state-law claims and remand this action to the Henry County Circuit Court for resolution.[12] *See* 28 U.S.C. § 1367(c)(3).

### IV. CONCLUSION

Because Plaintiffs did not address the Brahmbhatts' arguments regarding their status as a landlord under the FHA, VFHL, and VRLTA and did not exhaust their claims of

---

[11] Plaintiffs complaint does not mention the FLSA, and as it relates to Mrs. Lattimore's wage claims, there is no allegation that she was paid less than minimum wage or that she was entitled to overtime pay, only that she is owed unpaid wages. Absent any such allegations, the court cannot discern a claim that the Brahmbhatts fell below the "federal floor" set by FLSA. *See, e.g.*, *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1425 (4th Cir. 1990). That leaves only a general allegation of unpaid wages, which is actionable under Virginia's Wage Payment Act. *See* Va. Code Ann. § 40.1-29(J) ("[I]f an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action . . . against the employer . . . to recover payment of the wages . . . .").

[12] This was Plaintiffs' chosen forum to begin with, so it makes sense, at this stage, to return the case to that court.

discrimination with the EEOC, those claims are barred and the Brahmbhatts are entitled to summary judgment. And because Plaintiffs concede that a contract governed Mr. Lattimore's relationship with Truist but have been unable to offer any evidence that Truist's actions constituted malfeasance, their negligence claim is likewise subject to summary judgment.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 3rd day of January, 2024.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE